UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MASSACHUSETTS CORRECTION OFFICERS FEDERATED UNION, | ) ) ) ) |  |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 10-CV-10223-PBS |
| DEPARTMENT OF CORRECTION, and HAROLD W. CLARKE, | ) ) ) |  |
| Defendants. | ) ) |  |

**MEMORANDUM AND ORDER**

July 21, 2010

Saris, U.S.D.J.

**I. INTRODUCTION**

Plaintiff, the Massachusetts Correction Officers Federated Union ("MCOFU"), brings this action pursuant to 42 U.S.C. § 1983, along with various state law claims, against the Massachusetts Department of Correction ("DOC") and its commissioner, Harold W. Clarke, seeking an injunction that would require DOC to cease double-bunking inmates at the maximum security Souza-Baranowski Correctional Center ("SBCC").[1]  MCOFU represents uniformed

---

[1] The Complaint alleges violations of the right to equal protection and the right to due process.  It also appears to bring state law claims arising under the Code of Massachusetts Regulations.

officers of state and county correctional facilities across the Commonwealth of Massachusetts.

Asserting that double-bunking increases risks to the health and safety of corrections officers and of inmates at SBCC, plaintiff alleges that the DOC has violated the Due Process Clause of the Fourteenth Amendment.  After hearing, the Court **ALLOWS** defendants' Motion to Dismiss [Docket No. 10].

## II.  BACKGROUND

The following facts are drawn principally from the Complaint, with all reasonable inferences drawn in plaintiff's favor.  The Court also considers documents attached to the Complaint.  (Compl. Ex. 1-40.)  See generally Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (deciding that documents on which a complaint depends can be considered in ruling on a Rule 12(b)(6) motion).

DOC oversees Massachusetts state prisons and inmates. (Compl. ¶ 2.)  See generally Mass. Gen. Laws ch. 124, § 1 (2010). Clarke is the DOC Commissioner.  (Compl. ¶ 3.)  On November 4, 2008, DOC issued a proposal to expand the population at SBCC, a maximum security state facility located in Shirley, Massachusetts, and to accommodate the additional inmates by double-bunking as many as 450 cells, including up to six "Special Management Unit" cells, which house "maximum custody inmates." (Id. ¶¶ 8, 12; Ex. A.)  MCOFU immediately gave notice of its

opposition and offered various counter-proposals.  (Id. ¶ 13.) DOC proceeded to expand the inmate population without adopting any of MCOFU's proposals.  (Id. ¶ 14.)  By January 2009, DOC began double-bunking at SBCC.

Since these changes have been implemented, inmates at the facility have engaged in hostile, threatening, and violent behavior.  A number of inmates have threatened to attack or kill prospective cellmates.  (Id. ¶¶ 29, 34, 36, 37, 51.)  One inmate declared that any prisoner not resisting the new housing arrangements would be "beaten or stabbed."  (Id. ¶ 55.)  Others have made threats against corrections officers, with a handful of inmates threatening retribution for double-bunking.  (Id. ¶¶ 30, 32, 34, 38, 40, 42, 45, 46, 48, 49, 51, 55.)  One inmate declared "war" on SBCC corrections officers.  (Id. ¶ 46.)  Officers have discovered a number of crude metal weapons on the grounds and in the inmates' possession.  (Id. ¶¶ 35, 52, 54, 57.)  One inmate threatened that "one of you will have a piece of steel in your necks [sic]."  (Id. ¶ 42.)

The Complaint describes five serious inmate-on-officer attacks.  (Id. ¶¶ 64-68.)  One inmate attacked an officer after the latter ordered him to return a newspaper he had taken without permission.  (Id. ¶ 64.)  Another engaged an officer in a physical altercation while the officer patrolled a housing unit. (Id. ¶ 65.)  Two days later an inmate punched a corrections officer in the face during a housing assignment escort.  (Id. ¶

66.)  Five months after that, an inmate armed with a ballpoint pen stabbed the Superintendent of SBCC in the forehead when he visited a housing unit.  (Id. ¶ 67.)  An inmate also seriously wounded a corrections officer by punching and stabbing him with a sharp metal weapon following a verbal protest against the inmate's being double-bunked.  (Id. ¶ 68.)

Plaintiff alleges numerous other attacks, attaching to its Complaint a digest of incident reports indicating that SBCC inmates have carried out not less than 52 assaults on fellow inmates and 74 assaults on staff members since double-bunking began.  (Id. ¶¶ 69-70; Ex. 38-39.)  Plaintiff alleges that these violent "conditions" were "caused by the November 4, 2008 Proposal, and [its] subsequent implementation."  (Id. ¶ 71.)

Although DOC has kept a Special Operations Team posted to SBCC on a temporary basis since double-bunking began in an effort to reduce the likelihood of violence at the facility, it has not assigned any additional permanent corrections officers to the facility.  (Id. ¶ 74.)  Likewise, DOC has not introduced new safety plans to deal with the double-bunking of maximum security inmates.  (Id.)  MCOFU alleges that defendants "intentionally chose[] to maintain the pre-expansion number of correction officers as well as the pre-expansion policies and procedures."  (Id. ¶ 80.)

### III. DISCUSSION

**A.   Legal Standard**

In order to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).  In considering a motion to dismiss for failure to state a claim upon which relief can be granted, courts must take as true the allegations in the plaintiff's pleadings and must make all reasonable inferences in favor of the plaintiff.  Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005).  The Court may take into consideration the facts set out in public documents attached to the complaint or opposition, or expressly incorporated therein. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Consideration of any documents not incorporated or attached to the complaint is forbidden, unless the proceeding is properly converted into one for summary judgment. Id.

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  "The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim . . . nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion."

Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 n.3 (1st Cir. 2006).

**B.   Sovereign Immunity**

As a threshold matter, the Eleventh Amendment to the U.S. Constitution bars MCOFU's claim against DOC under 42 U.S.C. § 1983.  "In the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); see O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000) ("The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies and that this jurisdictional bar applies regardless of the nature of the relief sought." (internal quotation marks omitted)).  Moreover, the state is not a "person" within the meaning of section 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

The next question is whether MCOFU's § 1983 claim against Clarke is barred by the Eleventh Amendment.  As a general matter "where a suit nominally against a state official would actually operate against the State, [E]leventh [A]mendment immunity applies."  De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991) (citing Pennhurst, 465 U.S. at 101).

In Pennhurst the Supreme Court recognized a "need to reconcile [the] competing interests" of sovereign immunity and "the vindication of federal rights." Pennhurst, 465 U.S. at 105-06.  To do so, Pennhurst carefully preserved the holding of Ex parte Young, 209 U.S. 123 (1908), that "a suit challenging the [federal] constitutionality of a state official's action is not one against the State" and is therefore not barred by the Eleventh Amendment.  Pennhurst, 465 U.S. at 103-06 (citing Young, 209 U.S. 123).  Eleventh Amendment immunity does not operate where a State official is sued in his official capacity by a private party seeking only prospective injunctive relief to ensure that the officer's conduct complies with federal law. Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 530 n.24 (1st Cir. 2009) (citing Pennhurst, 465 U.S. at 102); see also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 71 n.14 (1996) ("an individual can bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law"); Will, 491 U.S. at 71 n.10 ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State." (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985))).  Because MCOFU's § 1983 claim against Clarke seeks prospective injunctive relief only, it is not barred by the Eleventh Amendment.

**C.   Due Process**

7

Plaintiff argues that double-bunking at SBCC amounts to a deprivation of its members' protected life or liberty interests, as evidenced by inmate attacks, in violation of substantive due process.  To establish a substantive due process claim, a plaintiff must show: (1) that there has been a deprivation of some protected interest; (2) that the deprivation was caused by government conduct; and (3) that the official action complained of shocks the conscience.  See Rivera, 402 F.3d at 33-36; J.R. v. Gloria, 593 F.3d 73, 79-80 (1st Cir. 2010).  Courts may first address whether the government conduct at issue is sufficiently conscience-shocking.  County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998) ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.").

Defendants argue that MCOFU does not allege a deprivation of any constitutionally-protected liberty interest because its members are voluntary employees who may leave their positions at any time.  In a similar case, the D.C. Circuit has held that the State had no constitutional obligation to protect corrections officers from the hazards that their employment entails. Fraternal Order of Police Dep't of Corr. Labor Comm. v. Williams, 375 F.3d 1141, 1146-47 (D.C. Cir. 2004) (quoting Washington v. District of Columbia, 802 F.2d 1478, 1482 (D.C. Cir. 1986)); see

also Collins v. City of Harker Heights, 503 U.S. 115, 127-30 (1992) (Due Process Clause does not require state employers to ensure minimal levels of safety and security in the workplace). Similarly here, plaintiff alleges no liberty interest protected by the Due Process Clause.

Even if there were a cognizable liberty interest at stake, defendants argue that their conduct simply does not shock the conscience. "[T]he Supreme Court has been firm in its reluctance to expand the doctrine of substantive due process," and for this reason it has instructed that "the official conduct 'most likely to rise to the conscience-shocking level' is 'conduct intended to injure in some way unjustifiable by any government interest.'" Maldonado v. Fontanes, 568 F.3d 263, 273 (1st Cir. 2009) (quoting Chavez v. Martinez, 538 U.S. 760, 775 (2003)). The conscience-shocking test is designed in part "to give incentives to prevent such gross government abuses of power as are truly outrageous." Rivera, 402 F.3d at 38. Defendants argue that in the context of a decreasing DOC budget, Clarke made a policy determination that sought to manage system-wide overcrowding by streamlining particular functions and by designating a single state facility, SBCC, as the primary maximum-security prison in DOC's care. (See Compl. Ex. A.) Clarke's action certainly did not involve the intentional infliction of harm on MCOFU members, and cannot be regarded as a

gross abuse of power.  See Williams, 375 F.3d at 1145-46 (holding that state officials' decision given budget cuts to lay off corrections officers while also increasing inmate population did not amount to a conscience-shocking abuse of power).

Plaintiff argues that deliberate indifference to its members' safety suffices to shock the conscience.  But as the First Circuit recently confirmed, "deliberately indifferent behavior does not per se shock the conscience."  Gloria, 593 F.3d at 80; see also Daniels v. Williams, 474 U.S. 327, 331 (1986) ("Historically, [the] guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty or property.").  Indeed, the First Circuit "has never found on the facts of a case that deliberately indifferent behavior was sufficiently conscience-shocking to violate a plaintiff's substantive due process rights."  Gloria, 593 F.3d at 80 n.4.  More fundamentally, the "burden to show state conduct that 'shocks the conscience' is extremely high, requiring 'stunning' evidence of 'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations resulting from bad faith' to 'something more egregious and more extreme.'" Id. at 80 (quoting DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir. 2005)).  There are no such allegations here.

**D.   Remaining Claims**

Plaintiff had also raised state-law claims, but it now concedes that the provisions upon which they were based do not create a private right of action.  Likewise, plaintiff's Complaint appeared to make an equal protection claim, which it has ceased to pursue.

### ORDER

Defendants' Motion to Dismiss [Docket No. 10] is **ALLOWED.**

                               /s/ PATTI B. SARIS
                              PATTI B. SARIS
                              United States District Judge